The Honorable James L. Robart

```
_____ FILED    _____ ENTERED
_____ LODGED   _____ RECEIVED

        MAY 16 2023

           AT SEATTLE
    CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY
                        DEPUTY
```

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR23-0082JLR |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| SUSANA TANTICO, | |
| Defendant. | |

The United States, through United States Attorney Nicholas W. Brown and Assistant United States Attorney Seth Wilkinson of the Western District of Washington and Susana Tantico and her attorney, Nancy Tenney, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1.    **Waiver of Indictment**. Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States Attorney in an Information.

2.    **The Charges**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of the following charges contained in the Information.

      a.    Wire Fraud, as charged in Count 1, in violation of Title 18, United States Code, Sections 1343 and 2, and

      b.    Wire Fraud, as charged in Count 2, in violation of Title 18, United States Code, Sections 1343 and 2.

By entering pleas of guilty, Defendant hereby waives all objections to the form of the charging document.  Defendant further understands that before entering any guilty plea, Defendant will be placed under oath.  Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3.    **Elements of the Offenses**.  The elements of the offenses to which Defendant is pleading guilty are as follows:

      a.    The elements of Wire Fraud, as charged in Counts 1 & 2, are as follows:

- First, the defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

- Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

- Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

- Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4.      **The Penalties**.  Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows:

a.      For the offense of Wire Fraud, as charged in Counts 1 & 2:  A maximum term of imprisonment of up to 20 years, a fine of up to $250,000, a period of supervision following release from prison of up to 3 years, and a mandatory special assessment of $100 dollars.  If a probationary sentence is imposed, the probation period can be for up to five (5) years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements.  Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed.  This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

5.      **Immigration Consequences**.   Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States.  Under federal law, a broad range of crimes are grounds

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   for removal, and some offenses make removal from the United States presumptively

2   mandatory.  Removal and other immigration consequences are the subject of a separate

3   proceeding, and Defendant understands that no one, including Defendant's attorney and

4   the Court, can predict with certainty the effect of a guilty plea on immigration status.

5   Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any

6   immigration consequences that Defendant's guilty pleas may entail, even if the

7   consequence is Defendant's mandatory removal from the United States.

8        6.    **Rights Waived by Pleading Guilty.**  Defendant understands that by

9   pleading guilty, Defendant knowingly and voluntarily waives the following rights:

10            a.    The right to plead not guilty and to persist in a plea of not guilty;

11            b.    The right to a speedy and public trial before a jury of Defendant's

12   peers;

13            c.    The right to the effective assistance of counsel at trial, including, if

14   Defendant could not afford an attorney, the right to have the Court appoint one for

15   Defendant;

16            d.    The right to be presumed innocent until guilt has been established

17   beyond a reasonable doubt at trial;

18            e.    The right to confront and cross-examine witnesses against Defendant

19   at trial;

20            f.    The right to compel or subpoena witnesses to appear on Defendant's

21   behalf at trial;

22            g.    The right to testify or to remain silent at trial, at which trial such

23   silence could not be used against Defendant; and

24            h.    The right to appeal a finding of guilt or any pretrial rulings.

25        7.    **United States Sentencing Guidelines**.  Defendant understands and

26   acknowledges that the Court must consider the sentencing range calculated under the

27   United States Sentencing Guidelines and possible departures under the Sentencing

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 4

Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a. The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d. Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

8.     **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

9.     **Statement of Facts**. Defendant admits Defendant is guilty of the charged offenses. The parties agree on the following facts:

1         a.     **Overview:** Starting at least as early as 2011, Defendant Susana

2 Tantico engaged in a scheme and plan to defraud and obtain money and property from

3 her employers (Employer 1 and Employer 2) by means of materially false and fraudulent

4 representations, and she acted with the intent to defraud and used and caused to be used

5 an interstate wire communication to carry out an essential part of her scheme. Defendant

6 defrauded her employers by paying for personal expenses with her employers' funds and

7 then hiding her theft by altering financial records, creating false entries in the employers'

8 records, and lying to the employers and auditors. Defendant used interstate wire

9 communications and transfers to steal the employers' funds and conceal her scheme.

10 From December 2016 to June 2020, Defendant stole at least $2,296,826.72 from

11 Employer 1, and from June 2020 to May 2022, Defendant stole at least $892,925.95 from

12 Employer 2. Defendant caused a loss to both employers of at least $3,189,752.67.

13         b.     ***Defendant's Fraud on Employer 1 (Community Healthcare***

14 ***Provider):*** Employer 1 is a local non-profit organization that provides healthcare services

15 to individuals who are otherwise underserved by the healthcare system. Employer 1 was

16 founded by civil rights organizations in the 1960s and 1970s and has multiple locations in

17 the Seattle area that provide healthcare services. In light of Employer 1's mission to treat

18 underserved populations, a substantial portion of its funding comes from federal, state,

19 and local governmental agencies.

20         c.     Defendant worked at Employer 1 from approximately 1999 to 2020.

21 Defendant worked in Employer 1's finance department, ultimately becoming Employer

22 1's Finance Director. Beginning at least as early as 2011, Defendant defrauded Employer

23 1 by stealing its funds to pay for her personal expenses and concealing her theft by

24 altering financial documents, creating fraudulent entries in Employer 1's accounting

25 records, and lying to Employer 1 and its auditors.

26         d.     Defendant used Employer 1's funds to pay for many personal

27 expenses.

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e.     For example, Defendant used Employer 1's funds to pay for multiple vacations for herself, her family, and her friends. One such vacation occurred in 2018 when Defendant used Employer 1's funds to pay for a vacation for herself and her family to visit Orlando, Florida. In February 2018, Defendant used Employer 1's funds to pay for plane tickets to Orlando, Florida, for herself, her domestic partner, and two other individuals for a trip in July 2018. In April 2018, Defendant used Employer 1's funds to pay for tickets for three additional individuals to fly to Orlando, Florida for the same trip. Defendant then used Employer 1's funds to pay for tickets, meals, entertainment, souvenirs, and other goods at Disney World and elsewhere. In total, during the Florida trip, Defendant used Employer 1's funds to pay for personal expenses totaling at least $26,057.02.

f.     One of the charges Defendant made during the Florida trip was the purchase of attraction tickets for herself and her family. On July 15, 2018, Defendant used Employer 1's credit card ending xx0980 to charge $5,075 for attraction tickets. Defendant used funds from Employer 1's Wells Fargo checking account to pay for the credit card charges for this and other trip expenses. Specifically, in July 2018, Defendant transferred funds from Employer 1's Wells Fargo bank account ending xx8652 on the following dates in the following amounts:

| Post Date | Amount |
|---|---|
| July 9, 2018 | $9,639.45 |
| July 16, 2018 | $8,918.62 |
| July 18, 2018 | $15,363.59 |
| July 31, 2018 | $11,064.81 |
| **Total** | **$44,986.47** |

Defendant made these payments using Employer 1's funds to pay for her Florida trip and other personal expenses, thereby cheating Employer 1 out of this property, all as part of

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

her scheme to defraud. Each of these fund transfers caused a wire communication to be sent from one state to another as part of the Defendant's fraud scheme.  As alleged in Count 1 of the Information, the transfer on July 31, 2018, caused a wire communication to be sent from Washington State to another state as part of Defendant's scheme. Defendant then created a journal entry in Employer 1's General Ledger to conceal these payments. Defendant created an entry in the amount of $44,986.47 for July 31, 2018, and falsely described the transaction as "Cardinal QRMT Pymt 180619." Defendant intended that this false entry in the General Ledger would deceive others into thinking that the payment for her family's vacation was actually a payment for medical supplies.

   g.   Defendant used Employer 1's funds to pay for another family trip to San Diego and Las Vegas in 2017.  While in San Diego, Defendant used Employer 1's funds for numerous expenses, including room charges and tickets to SeaWorld and Legoland.  In Las Vegas, Defendant used Employer 1's funds to pay for room charges, cash withdrawals at casinos, retail purchases (including $1,393.16 at Nike), and dining charges (including $546.66 at the Mandalay Buffet).  In all, Defendant used at least $24,971.42 of Employer 1's funds to pay for the San Diego/Las Vegas trip for herself and her family. To conceal her theft, Defendant created a journal entry in Employer 1's accounting records in the amount of $43,617.06 for July 31, 2017, and falsely expensed the transaction to "Pharmacy Supplies 340B."  Defendant intended that this false entry in the General Ledger would deceive others into thinking that the payment was for medical supplies, not for her family's vacation.

   h.   Defendant also used Employer 1's funds to pay for other personal expenses. For example, from December 2016 to May 2020, Defendant used Employer 1's funds to make purchases at Nordstrom totaling $83,189.04.  Below is a sample of purchases made at Nordstrom:

//

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Transaction Date | Purchase Total |
|---|---|
| April 15, 2017 | $1,949.37 |
| March 31, 2018 | $1,799.02 |
| November 16, 2019 | $2,567.56 |

i.      Defendant similarly used Employer 1's funds to buy other goods for herself and her associates. From December 2016 to May 2020, Defendant stole Employer 1's funds to make purchases at Apple totaling $41,049.87.

j.      Defendant also withdrew large sums of Employer 1's funds at casinos, which funds she then gambled and lost. From December 2016 to May 2020, Defendant withdrew $1,674,514.45 of Employer 1's funds at casinos.

k.      Defendant took many steps to deceive Employer 1 and conceal her fraud scheme. For example, in 2019, Defendant deceived Employer 1's Board of Directors by personally helping to develop financial policies prohibiting the kind of fraud in which she was engaged. That year, Defendant helped Employer 1 develop, prepare, and approve financial policies and procedures for use of Employer 1's funds. One of the adopted policies prohibited employees (including Defendant) from using Employer 1's credit cards for personal expenses and required employees (including Defendant) to report fraud to the Executive Director. At the time Defendant helped to develop and approve those policies, she was actively violating them by using Employer 1's credit cards to pay for her personal expenses.

l.      Defendant also concealed her scheme by lying to Employer 1's auditor. Employer 1 was subject to annual audits, and as part of that process, the auditor asked Defendant whether she was aware of any fraud at Employer 1. In response to these inquiries, Defendant denied any knowledge of fraud. For example, on July 14, 2017, the auditor asked Defendant, who was the Director of Finance at the time, if she was aware

1  of any fraud, and Defendant responded that there was no fraud at Employer 1. Defendant

2  repeated similar lies to the auditors again in 2018, 2019, and 2020.

3        m.      Another method Defendant used to conceal her fraud scheme was to

4  alter Employer 1's financial documents. Defendant doctored bank statements to change

5  descriptions of payments for Employer 1's credit card, which Defendant had used to

6  make unauthorized purchases for her personal use, to descriptions of payments to a

7  provider of healthcare supplies. For example, in an attachment to an email sent to

8  auditors on August 12, 2019, Defendant changed the December 2018 statement for

9  Employer 1's Wells Fargo bank account so that six payments for her credit card, totaling

10  $75,134.17, appeared to be payments to a provider of healthcare supplies.

11        n.      ***Fraud on Employer 2 (Non-profit Advocacy Organization):*** On

12  June 15, 2020, Defendant resigned from Employer 1. Soon thereafter, she began working

13  for Employer 2.

14        o.      Employer 2 is a Seattle-based nonprofit organization that addresses

15  criminal justice issues. During the summer of 2020, Employer 2 hired Defendant as its

16  Director of Finance. Defendant soon continued her fraud scheme by stealing funds from

17  Employer 2 to pay for her personal expenses.

18        p.      Defendant stole from Employer 2 in a number of ways, including by

19  withdrawing Employer 2's money at banks to pay for personal expenses. Defendant

20  undertook one of those withdrawals on October 6, 2021, when she entered a Columbia

21  Bank and made a counter withdrawal of $3,200 from Employer 2's Columbia Bank

22  account ending xx4624. Defendant took those funds without Employer 2's authorization

23  and used the funds for personal expenses. Defendant concealed this withdrawal by

24  altering a bank statement before sending it to Employer 2's external auditor. Specifically,

25  Defendant altered a statement for Employer 2's bank account by removing the October 6,

26  2021 withdrawal for $3,200 as well as several other withdrawals at banks and casinos.

27  Defendant's changes to the bank statement made it appear that the debits on one page of

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the monthly bank statement totaled $7,332.74, when the actual bank statement showed

2  that the debits on that page totaled $21,376.19. On May 4, 2022, Defendant then

3  transmitted the false bank statement via an online file sharing site to Employer 2's

4  accountant located in Marietta, Georgia.

5        q.    From June 2020 to May 2022, Defendant made numerous counter

6  withdrawals from Employer 2's bank accounts without Employer 2's authorization and to

7  pay for her personal expenses. The Defendant's fraudulent counter withdrawals from

8  Employer 2's bank accounts totaled $197,200, which was part of the total loss she caused

9  to Employer 2.

10        r.    Defendant also defrauded Employer 2 by using Employer 2's funds

11  to pay for her mortgage. Defendant and her domestic partner own the property at 11305

12  SE 179th Street, Renton, Washington, 98055 (Parcel number: 3276900160) (the "Renton

13  Property"). Defendant and her domestic partner financed the purchase of the Renton

14  Property using a mortgage, which is currently serviced by PHH Mortgage. From

15  December 3, 2020, to December 17, 2021, Defendant used funds from Employer 2's

16  BECU accounts ending xx1468 and xx1893 to make regular payments to PHH Mortgage

17  to pay Defendant's mortgage. The payments and dates are as follows:

| Post Date | Amount |
|---|---|
| December 3, 2020 | $ 1,496.76 |
| January 7, 2021 | $ 2,993.52 |
| March 18, 2021 | $ 4,061.40 |
| May 14, 2021 | $ 2,993.52 |
| July 21, 2021 | $ 1,496.76 |
| September 1, 2021 | $ 1,527.34 |
| October 5, 2021 | $ 3,309.53 |
| October 13, 2021 | $ 1,527.34 |
| December 17, 2021 | $ 1,527.34 |
| **Total** | **$20,933.51** |

26  Defendant conducted each of these transactions as part of her fraud scheme, and each

27  transfer involved a wire communication that traveled from one state to another.

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Specifically, as alleged in Count 2, Defendant conducted the transfer of funds from Employer 2's bank account at BECU to PHH Mortgage on December 3, 2020, and that transfer caused the transmission of a wire communication from Washington State to another state. As part of her fraud scheme, Defendant used Employer 2's funds to make mortgage payments for the Renton Property totaling at least $20,933.51, which was part of the total loss she caused to Employer 2.

s.     Defendant concealed her theft by creating journal entries in Employer 2's accounting records that disguised her personal mortgage payments.  For example, Defendant created a journal entry on January 31, 2021, that falsely classified her personal mortgage payment of $2,993.52 as "Program Covid Assistance."  Defendant also entered a transaction description of "Covid Rental Assistance" for the entry.

t.     Defendant also defrauded Employer 2 by using Employer 2's funds to pay for a family vacation. For example, in August 2021, Defendant used Employer 2's credit card ending xx1919 to pay for a vacation to Ocean Shores, Washington.  In total, during the Ocean Shores trip, Defendant used Employer 2's credit card to pay for expenses totaling $1,632.16.

u.     Defendant further defrauded Employer 2 by making regular transfers from Employer 2's bank account to her personal bank account. For example, on November 3, 2021, Defendant transferred $2,580.62 from Employer 2's BECU account ending xx1893 to Defendant's own BECU bank account ending in xx8616. In November 2021, Defendant made numerous similar transfers from Employer 2's bank account to her own bank account, which transfers totaled $15,504.39. From June 2020 to May 2022, Defendant transferred from Employer 2's bank account to her own bank account a total of $163,841.42, which was part of the total loss she caused to Employer 2. None of these transfers were authorized by Employer 2, and all of these transfers were part of her scheme to defraud.

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

v.      Defendant further stole Employer 2's funds by withdrawing money from Employer 2's bank account at casinos and gambling with the money. For example, on January 25, 2021, Defendant withdrew $6,000 from Employer 2's Columbia Bank account ending xx4624. She withdrew these funds without Employer 2's authorization and while at the Snoqualmie Casino. Defendant then gambled with these funds.

w.      Defendant concealed these withdrawals and others by altering bank statements before sending them to Employer 2's external auditor. Specifically, Defendant removed the January 25, 2021 withdrawals totaling $6,000 as well as several other withdrawals at casinos to make it appear that the debits on one page of the monthly bank statement totaled $3,949.27, when the actual bank statement showed that the debits on that page totaled $45,700.23. Defendant then transmitted the false bank statement on May 4, 2022 via an online file sharing site to Employer 2's accountant located in Marietta, Georgia. In total, from June 2020 to May 2022, Defendant withdrew from Employer 2's bank accounts at least $485,864.19 at casinos that Defendant then used to gamble or pay for other expenses. These casino withdrawals were part of the total loss she caused to Employer 2

x.      Defendant further concealed her theft by lying to bank officials who inquired about the nature of some of Defendant's transactions.  In early February 2021, Columbia Bank officials contacted Defendant via telephone to inquire about the large amount of casino ATM withdrawals against Employer 2's accounts.  Defendant falsely told the official that Employer 2 held youth program events at casinos and the cash withdrawals were for prize giveaways.

y.      Employer 2 incurred substantial costs in response to Defendant's fraud scheme. Employer 2 has had to undertake an internal forensic review, fix its accounting records, respond to vendors, revise its procedures, and take additional steps to recover from Defendant's fraud scheme. Defendant's fraud has caused Employer 2 at least $132,000 in these additional costs.

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

z. Defendant admits that her false statements to and her omission of facts from Employer 1, Employer 2, and others were material because they had a natural tendency to influence Employer 1 and Employer 2 to part with their funds. Defendant further admits that in furthering her scheme and undertaking the conduct described in the paragraphs above, she intended to deceive and cheat Employer 1 and Employer 2.

aa. Defendant admits that all of the conduct described above was part of her scheme to defraud Employer 1 and Employer 2. Defendant further admits that the payments described above were made without authorization from Employer 1 and Employer 2.

bb. Defendant admits that she obtained at least $3,189,752.67 as proceeds of her Wire Fraud scheme. Defendant further admits that she used at least $20,933.51 of these proceeds to make mortgage payments on the Renton Property (real property at 11305 SE 179th Street, Renton, Washington, 98055 (Parcel number: 3276900160), and that she dissipated the remainder of the proceeds through gambling and spending on trips, luxury items, and other unrecoverable personal expenses.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

10. **Sentencing Factors**. The parties agree that the following Sentencing Guidelines provisions apply to this case:

a. A base offense level of 7, pursuant to USSG § 2B1.1(a), because Defendant was convicted of an offense referenced by the guideline and that offense of conviction has a statutory maximum term of imprisonment of 20 years or more;

b. An offense level enhancement of 16 levels, pursuant to USSG § 2B1.1(b), because the loss exceeded $1,500,000 but did not exceed $3,500,000;

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

c.      An offense level enhancement of 2 levels, pursuant to USSG § 3B1.3, because the defendant abused a position of private trust and used a special skill in a manner that significantly facilitated the commission and concealment of the offense;

d.      An offense level reduction for acceptance of responsibility, pursuant to USSG § 3E1.1 and consistent with Paragraph 11 below, conditioned upon Defendant's fulfillment of the requirements stated at USSG §3E1.1.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines.  Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

11.    **Acceptance of Responsibility.**  At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

12.    **Recommendations Regarding Imprisonment**.  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the government agrees to recommend that the a term of imprisonment of no more than 41 months.  Defendant can make any recommendation allowed by the law. Defendant understands that the parties' recommendations are not binding on the Court and the Court may reject the recommendations of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law.  Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court.  Except as otherwise provided in

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  this Plea Agreement, the parties are free to present arguments regarding any other aspect

2  of sentencing.

3      13.  **Restitution.**

4      Defendant shall make restitution to Employer 1 in the amount of $2,296,826.72

5  and restitution to Employer 2 in the amount of $1,024,925.95, with credit for any

6  amounts already paid. The identities of Employer 1 and Employer 2 will be set forth in

7  the Judgment.

8      a.  The full amount of restitution shall be due and payable immediately

9  on entry of judgment and shall be paid as quickly as possible.  If the Court finds that the

10  defendant is unable to make immediate restitution in full and sets a payment schedule as

11  contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule

12  represents a minimum payment obligation and does not preclude the U.S. Attorney's

13  Office from pursuing any other means by which to satisfy the defendant's full and

14  immediately-enforceable financial obligation, including, but not limited to, by pursuing

15  assets that come to light only after the district court finds that Defendant is unable to

16  make immediate restitution.

17      b.  Defendant agrees to disclose all assets in which Defendant has any

18  interest or over which Defendant exercises control, directly or indirectly, including those

19  held by a spouse, nominee, or third party.  Defendant agrees to cooperate fully with the

20  United States' investigation identifying all property in which Defendant has an interest

21  and with the United States' lawful efforts to enforce prompt payment of the financial

22  obligations to be imposed in connection with this prosecution.  Defendant's cooperation

23  obligations are:  (1) before sentencing, and no more than 30 days after executing this Plea

24  Agreement, truthfully and completely executing a Financial Disclosure Statement

25  provided by the United States Attorney's Office and signed under penalty of perjury

26  regarding Defendant's and Defendant's spouse's financial circumstances and producing

27  supporting documentation, including  tax returns, as requested; (2) providing updates

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within

2  seven days of the event giving rise to the changed circumstances; (3) authorizing the

3  United States Attorney's Office to obtain Defendant's credit report before sentencing; (4)

4  providing waivers, consents or releases requested by the U.S. Attorney's Office to access

5  records to verify the financial information; (5) authorizing the U.S. Attorney's Office to

6  inspect and copy all financial documents and information held by the U.S. Probation

7  Office; (6) submitting to an interview regarding Defendant's Financial Statement and

8  supporting documents before sentencing (if requested by the United States Attorney's

9  Office), and fully and truthfully answering questions during such interview; and (7)

10  notifying the United States Attorney's Office before transferring any interest in property

11  owned directly or indirectly by Defendant, including any interest held or owned in any

12  other name, including all forms of business entities and trusts.

13       c.    The parties acknowledge that voluntary payment of restitution prior

14  to the adjudication of guilt is a factor the Court considers in determining whether

15  Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).  In

16  addition, in any event, the government will consider Defendant's cooperation regarding

17  restitution in making its sentencing recommendation.

18       14.    **Forfeiture of Assets**.  Defendant understands that the forfeiture of assets is

19  part of the sentence imposed in this case.  Defendant agrees to forfeit to the United States

20  immediately Defendant's right, title, and interest in any and all property, real or personal,

21  constituting or derived from, any proceeds that Defendant obtained, directly or indirectly,

22  as a result of her commission of the Wire Fraud scheme, as charged in the Information.

23  This property is subject to forfeiture pursuant to Title 18, United States Code, Section

24  981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), and includes, but

25  is not limited to, a sum of money in the amount of $3,189,752.67 (the "Sum of Money"),

26  representing the proceeds Defendant personally obtained, directly or indirectly, as a result

27  of her commission of the Wire Fraud scheme.

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Defendant further understands and acknowledges that the Sum of Money

2  described above is separate and distinct from any restitution the Court may order in this

3  case. The United States agrees, however, that it will request the Attorney General apply

4  any amounts it collects toward satisfaction of this forfeited sum to the restitution that is

5  ordered. The United States also agrees that any amount Defendant pays toward restitution

6  will be credited against this forfeited sum.

7    Defendant consents to the entry of an Order of Forfeiture for the unpaid amount, if

8  any, of the Sum of Money at the time of sentencing. Defendant acknowledges that the

9  United States will record the Order of Forfeiture against her in King County,

10  Washington.

11    Defendant agrees that the factors set forth in Title 21, United States Code, Section

12  853(p)(1)(A)-(E), have been satisfied. Defendant understands that the United States may

13  seek to pursue additional property of Defendant as substitute assets, pursuant to Title 21,

14  United States Code, Section 853(p), until such time as the Sum of Money is paid in full.

15    Defendant agrees to fully assist the United States in the forfeiture of the above-

16  described property and to take whatever steps are necessary to pass clear title to the

17  United States, including but not limited to: surrendering title and executing any

18  documents necessary to effectuate such forfeiture; assisting in bringing any assets located

19  outside the United States within the jurisdiction of the United States; and taking whatever

20  steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed,

21  wasted, hidden, or otherwise made unavailable for forfeiture.  Defendant agrees not to

22  file a claim, or to assist any third party with filing a claim, to any of the above-described

23  property in any federal forfeiture proceeding, administrative or judicial, which may be or

24  has been initiated.

25    The United States reserves its right to proceed against any assets including any

26  property in which Defendant has any interest or control, if said assets constitute or are

27  derived from proceeds of the wire fraud scheme.

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15. **Abandonment of Contraband**. Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

16. **Non-Prosecution of Additional Offenses**. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

17. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range.  Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

18.   **Waiver of Appellate Rights and Rights to Collateral Attacks.**
Defendant acknowledges that, by entering the guilty pleas required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction.  Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

a.   Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          b.      Any right to bring a collateral attack against the conviction and

2   sentence, including any restitution order imposed, except as it may relate to the

3   effectiveness of legal representation.

4          This waiver does not preclude Defendant from bringing an appropriate motion

5   pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or

6   the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

7          If Defendant breaches this Plea Agreement at any time by appealing or collaterally

8   attacking (except as to effectiveness of legal representation) the conviction or sentence in

9   any way, the United States may prosecute Defendant for any counts, including those with

10  mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea

11  Agreement.

12         19.     **Voluntariness of Plea**.  Defendant agrees that Defendant has entered into

13  this Plea Agreement freely and voluntarily, and that no threats or promises were made to

14  induce Defendant to enter a plea of guilty other than the promises contained in this Plea

15  Agreement or set forth on the record at the change of plea hearing in this matter.

16         20.     **Statute of Limitations**.  In the event this Plea Agreement is not accepted

17  by the Court for any reason, or Defendant breaches any of the terms of this Plea

18  Agreement, the statute of limitations shall be deemed to have been tolled from the date of

19  the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the

20  Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach

21  of the Plea Agreement by Defendant is discovered by the United States Attorney's

22  Office.

23         21.     **Completeness of Plea Agreement**.  The United States and Defendant

24  acknowledge that these terms constitute the entire Plea Agreement between the parties,

25  except as may be set forth on the record at the change of plea hearing in this matter.  This

26  Plea Agreement binds only the United States Attorney's Office for the Western District

27

*United States v. Susana Tantico*, CR23-0082JLR
Plea Agreement - 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   of Washington.  It does not bind any other United States Attorney's Office or any other

2   office or agency of the United States, or any state or local prosecutor.

3         Dated: May 16, 2023.

4

5                                        SUSANA TANTICO

6                                        Defendant

7

8

9                                        NANCY TENNEY
                                         Attorney for Defendant

10

11

12                                       SETH WILKINSON
                                         Assistant United States Attorney

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27